UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RYAN ELDRIDGE and STACI ELDRIDGE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 25-CV-0035-CVE-JFJ |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY and STACY SWEETEN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiffs' Motion to Remand (Dkt. # 17). State Farm Fire and Casualty Company (State Farm) removed this case to federal court on the basis of diversity jurisdiction, even though plaintiffs and defendant Stacy Sweeten are citizens of Oklahoma. State Farm argues that plaintiffs fraudulently joined Sweeten as a defendant to defeat diversity jurisdiction, and Sweeten should be disregarded as a party for the purpose of determining whether the Court has diversity jurisdiction over this case. Dkt. # 2, at 5. Plaintiffs ask the Court to remand the case to Tulsa County District Court, because they have alleged viable claims of negligent procurement of insurance and constructive fraud against Sweeten and complete diversity of citizenship does not exist. Dkt. # 17.

**I.**

Plaintiffs Ryan and Staci Eldridge filed this case in Tulsa County District Court alleging claims against State Farm and Sweeten arising out of State Farm's partial denial of plaintiff's claim for insurance coverage of a fire-damaged boat. Plaintiffs allege that they contacted Sweeten to obtain insurance coverage for a 2018 Chaparral 203 Vortex boat, but the petition does not allege when plaintiffs initially contacted Sweeten. Dkt. # 2-5, at 2. Sweeten allegedly assured plaintiffs

that it would not be a problem to procure boat insurance, and plaintiffs state that Sweeten "procured, and State Farm issued, a full replacement cost insurance policy, Policy No. 36-CC-Z709-2" for the boat. Id.

On May 4, 2023, the engine of plaintiffs' boat caught fire and plaintiffs allege that electrical components and the engine were destroyed, and plaintiffs filed a timely insurance claim with State Farm for coverage of the damage. Id. at 3. Plaintiffs allege that State Farm did not send anyone to inspect the boat until July 23, 2023, and the allegedly inexperienced marine surveyor sent by State Farm conducted a "brief and inadequate inspection." Id. Plaintiffs sought to repair their boat and were able to repair certain electrical components. Id. at 4. However, the Rotax engine on the boat was no longer manufactured, and they could not obtain replacement parts to repair the engine. Id. State Farm agreed to reimburse plaintiffs for the cost of the electrical components, but State Farm denied plaintiffs' request to deem the boat a total loss. Id. State Farm determined that the fire was caused by a mechanical breakdown that was not covered under the policy, and State Farm found no evidence of physical damage to the boat. Id. Plaintiffs allege that State Farm denied their claim pursuant to a state-wide scheme or practice of systematically denying valid claims by means of fraudulent justifications. Id. at 4-5.

Plaintiffs' second amended petition alleges claims of breach of contract and bad faith against State Farm, but plaintiffs also claims of negligent procurement of insurance and constructive fraud against Sweeten.[1] Plaintiffs assert that State Farm partially denied their insurance claim pursuant

---

[1] Plaintiffs' original petition named State Farm and the Stacy Sweeten Agency, LLC as parties, but plaintiffs subsequently dismissed its claims against the Stacy Sweeten Agency, LLC. Plaintiffs filed an amended petition alleging claims against State Farm and Sweeten, and the amended petition (Dkt. # 2-4) appears to be very similar to the second amended petition (Dkt. # 2-5) that is the current operative pleading in the case.

a scheme to consistently deny or underpay valid claims, and plaintiffs claims that State Farm's action constitute an intentional and bad faith breach of the insurance contract. As to Sweeten, plaintiffs allege that he falsely represented that could procure insurance for the boat "that would fully restore the Insured Property to its pre-loss condition in the event of damage and/or loss-no matter the extent of damage sustained." Id. at 10. Plaintiffs allege that Sweeten was required to perform an inspection of the boat before the policy was issued and before every subsequent renewal of the policy to insure that all damage to the boat would be fully covered under the policy. Id. Plaintiffs suggest that Sweeten was negligent in procuring insurance on their behalf, either as to State Farm's underwriting guidelines or the amount of coverage, because State Farm denied their insurance claim due to a mechanical defect that was not covered under the insurance policy. Id. at 12-13.

The policy issued by State Farm insures the boat, boat equipment, and trailer for an amount up to $45,030, and the policy expressly covers claims for property damage to the boat. Dkt. # 2-32, at 9. The policy defines "[p]roperty damage" as "physical damage to or destruction of tangible property, including loss of use of this property," and the policy states that State Farm will pay only for "accidental direct physical loss to the property." Id. at 9-10. In a section titled "LOSSES NOT INSURED," the policy expressly excludes coverage for "wear, tear, decay, marring, scratching, denting, deterioration, inherent vice, latent defect, or mechanical breakdown . . . ." Id. at 10. Plaintiffs' second amended petition is not clear when they originally procured an insurance policy for their boat, but discovery materials provided by State Farm show that plaintiffs sought and procured boat insurance in July 2018. Dkt. # 2-28, at 51.

After the case was filed, State Farm deposed plaintiffs and asked specific questions about their communications with Sweeten when they procured insurance for the boat. Staci Eldridge

3

contacted Sweeten by email to procur insurance for the boat, and Ryan Eldridge did not communicate with Sweeten prior to the filing of the insurance claim. Dkt. # 2-34, at 3; Dkt. # 2-35, at 3 ("I would have emailed and told them I needed coverage for bla-bla-bla boat"). Staci Eldridge never spoke to Sweeten or anyone from his office about her insurance needs, and she "just emailed asking for coverage." Dkt. # 2-34, at 3-4. State Farm's attorney asked Staci Eldridge if she asked any questions of anyone in Sweeten's office about the insurance, and she could not remember asking any specific questions or if she asked for a specific amount of coverage. Id. at 5. She subsequently explained that she "expected [Sweeten] to give [her] the right policy," meaning a policy that covered all possible harms with no exclusions. Id. at 7. She claims that she wanted "full coverage" for the boat, and her assumption was that a policy would cover any claim that plaintiffs might file with the insurer for the boat, including any manufacturer's defects. Id. at 7. However, Staci Eldridge's deposition testimony provides no basis for the Court to infer that she communicated anything to Sweeten about her insurance needs or her assumptions about what the policy would cover. Staci Eldridge also testified that her only complaint about Sweeten is that plaintiffs' insurance claim was not paid. Dkt. # 17-7, at 11. Ryan Eldridge testified that the boat was brand new when plaintiffs purchased the boat in 2018 and initially procured insurance coverage for the boat. Dkt. # 2-35, at 4. Ryan Eldridge believes that Sweeten should have inspected the boat before initially seeking an insurance policy from State Farm, but Ryan Eldridge acknowledged that the boat was new and in good working order in 2018. Id. at 7. Ryan Eldridge admits that he did not read the boat insurance policy, and in his experience as an "adjuster" he has never encountered an insurance policy with no exclusions. Id. at 6.

II.

Plaintiffs argue that the Court lacks diversity jurisdiction over this case and asks the Court to remand the case to state court. Plaintiffs contend that Sweeten has properly been joined as a party on the grounds that Sweeten failed to procure the insurance policy plaintiffs sought or that he failed to advise them of the exclusions in the policy he actually procured for plaintiffs' boat. Dkt. # 17. State Farm responds that plaintiffs' claims against Sweeten have no possibility of success, because Sweeten procured a full replacement insurance policy for the plaintiffs' boat and plaintiffs' deposition testimony clearly establishes that they did not make more specific disclosures about their insurance needs when they contacted Sweeten to obtain boat insurance. Dkt. # 20.

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005); Penteco Corp. Ltd. Partnership--1985A v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005). The party invoking federal jurisdiction has the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case"); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction"). "The Court resolves doubtful cases in favor of remand." McDonald v. CSAA Ins. Exch., 2017 WL

887108, *2 (W.D. Okla. Mar. 6, 2017) (citing Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982)).

A defendant may remove a case to federal court if the case is one over "which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." The Supreme Court has construed § 1332 to require complete diversity, and the "plaintiff must meet the requirements of the diversity statute for *each* defendant . . . ." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (emphasis in original). The Supreme Court has recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). A defendant can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional factual allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. DeSmet v. CSAA Ins. Exch., 2019 WL 7284769, *2 (N.D. Okla. Dec. 27, 2019) (citing Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006)). If a defendant can show that all non-diverse defendants were fraudulently joined, the remaining parties will be completely diverse and the federal court has subject matter jurisdiction. See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder.").

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument. Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "After resolving disputed questions of fact and ambiguities in favor of the plaintiffs, the court then determines whether they have 'any possibility of recovery against the party whose joinder is questioned.'" Asbury v. N. Star Mut. Ins. Co., 2015 WL 588607, *1 (W.D. Okla. Feb. 11, 2015) (quoting Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, *1 (10th Cir. Apr. 14, 2000)). "[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006).[2] "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Id. Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot, 378 F.2d at 882.

The issue before the Court is whether plaintiffs have alleged any possible basis for recovery against Sweeten and, if plaintiffs have a potentially viable claim of negligent procurement of insurance or constructive fraud against Sweeten, the case should be remanded to state court. With

---

[2] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

respect to plaintiffs' negligent procurement of insurance claim (count III), under Oklahoma law "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Swickey v. Silvey Companies, 979 P.2d 266, 269 (Okla. Civ. App. 1999). "This duty rests, in part, on 'specialized knowledge [about] the terms and conditions of insurance policies generally.'" Rotan v. Farmers Ins. Group of Cos., 83 P.3d 894, 895 (Okla. Civ. App. 2003) (citing Swickey, 979 P.2d at 269). In discharging their duty to act in good faith and exercise reasonable care, skill, and diligence in insurance procurement, "insurance agents *need only offer coverage mandated by law and coverage for needs that are disclosed by the insureds*, and this duty is not expanded by general requests for 'full coverage' or 'adequate protection.'" Id. (emphasis in original). If an agent is not provided with pertinent information, "the scope of the agent's duty to use reasonable care, skill, or diligence in the procurement of insurance does not extend" to create liability for unknown information. Rotan, 83 P.3d at 895. Oklahoma courts are in agreement that an insurance agent does "not have a duty to advise an insured with respect to his insurance needs." Id.; Mueggenborg v. Ellis, 55 P.3d 452, 453 (Okla. Civ. App. 2002). "What is required is that the agent 'offer coverage . . . for needs that are disclosed by the insured.'" Asbury v. North Star Mut. Ins. Co., 2015 WL 588607, *2 (W.D. Okla. Feb. 11, 2015) (quoting Rotan, 83 P.3d at 895).

Plaintiffs' second amended petition alleges that Sweeten requested and State Farm issued a replacement cost policy, and there is no dispute that the policy was in effect when the boat was

damaged by an electrical fire.[3]  Dkt. # 2-5, at 2, 11.  Oklahoma courts have been clear that an insurance agent's duty to procure an insurance policy extends only to insure needs actually disclosed to the agent by the insured.  Rotan, 83 P.3d at 895; Swickey, 979 P.2d at 268.  Plaintiffs' deposition testimony establishes that no specific insurance needs were disclosed to Sweeten by either plaintiff when they sought insurance coverage for their boat.  Ryan Eldridge testified that he was not involved with procuring insurance coverage for the boat, and this matter was handled solely by Staci Eldridge.  Staci Eldridge contacted Sweeten's office by email to procur insurance for the boat, and she does not recall asking any specific questions or disclosing any particular insurance needs to Sweeten.  Dkt. # 2-34, at 3 ("I would have emailed and told them I needed coverage for bla-bla-bla boat").  Plaintiffs' second amended petition does contain an allegation that they requested a policy that would have covered all potential losses without any exclusions in the policy.  Dkt. # 2-5, at 13.  However, this allegation is directly contradicted by plaintiffs' deposition testimony, and the Court can rely on evidence outside the pleadings when considering the issue of fraudulent joinder.  See Smoot, 378 F.2d at 881-82; Proctor v. State Farm Fire & Cas. Co., 2007 WL 9711213 (W.D. Okla. Jan. 30, 2007).

---

[3]  Plaintiffs devote a substantial portion of their motion to remand to State Farm's supposed argument that the issuance of any insurance policy for the boat negates plaintiffs' negligent procurement of insurance claim against Sweeten. Dkt. # 17, at 12-15.  State Farm does not rely on a general argument that any insurance policy would satisfy Sweeten's duty as an insurance agent but, instead, State Farm does contend that Sweeten procured insurance for the boat that was consistent with insurance needs actually disclosed by Staci Eldridge when she sought insurance for the boat.  The Court finds no reason to consider a generic argument that any insurance policy would suffice to meet Sweeten's obligations, but the Court will consider State Farm's more nuanced argument that the policy issued by State Farm was consistent with Staci Eldridge's disclosed needs for a boat insurance policy.

Plaintiffs also argue that Sweeten should have inspected the boat prior to seeking insurance from State Farm, because the denial of plaintiffs' insurance claim suggests that the boat would not have met State Farm's underwriting guidelines due to mechanical defect. The Court initially notes that plaintiffs have cited no legal authority in support of this proposition, and it is not clear that the alleged duty to inspect can give rise to a negligent procurement of insurance claim. Even if the proposition asserted by plaintiffs is consistent with Oklahoma law, it would have no application in this case based on their factual allegations. Plaintiffs initially procured the insurance policy for the boat in 2018, and Ryan Eldridge admits that the boat was new and in good working order at that time. Dkt. # 2-34, at 7. Neither plaintiffs' allegations in the second amended petition nor plaintiffs' deposition testimony suggest that Sweeten would have found the alleged defect had he conducted an inspection in 2018. Plaintiffs have not alleged that an inspection at any time, such as a subsequent renewal, would have actually alerted Sweeten to the presence of the hidden electrical defect that caused the fire, and the alleged failure of Sweeten to inspect the boat has no bearing on plaintiff's negligent procurement of insurance claim. The Court does not find that plaintiffs have alleged a potentially viable claim for negligent procurement of insurance against Sweeten.

Plaintiffs have also alleged a constructive fraud claim against Sweeten, and this type of claim is distinct from an ordinary common-law fraud claim. Under Oklahoma law, a plaintiff must prove by clear and convincing evidence four elements to prevail on a claim of fraud: "(1) a false misrepresentation of a material fact, (2) made as a positive assertion either known to be false or recklessly made without knowledge of the truth, (3) made with the intention of causing the other party to act, and (4) which is relied on by the other party to his or her own detriment." Gish v. ECI Servs. of Oklahoma, Inc., 162 P.3d 223, 228 (Okla. Civ. App. 2006). Constructive fraud, as

opposed to actual fraud, is "a breach of legal or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." Croslin v. Enerlex, Inc., 308 P.3d 1041, 1046 (Okla. 2013).  A claim of constructive fraud may be based on a negligent or innocent misrepresentation when there is an underlying duty to correctly inform another person of certain facts.  Id.

Plaintiffs argue that constructive fraud does not require them to allege that Sweeten acted with the intent to deceive, and this type of claim may be based on an innocent or mistaken representation by Sweeten that he could obtain the insurance policy that plaintiffs were seeking for their boat. Dkt. # 17, at 15-16.  Plaintiffs city Gentry v. American Motorist Insurance Company, 867 P.2d 468 (Okla. 1994), for the proposition that an insurance agent's failure to advise an insured that an insurance policy has certain exclusions can give rise to a constructive fraud claim, even if the agent is unaware that the policy contains the exclusions.  Id. at 16.  However, the duty recognized in Gentry is not triggered by a general request for insurance coverage, and Gentry does not suggest that an insurance agent must disclose all possible exclusions every time a person seeks insurance coverage.  In Gentry, the insured requested an "all-risk" insurance policy that would cover all risks associated with a construction job, and the insured specifically inquired about coverage for theft claims.  867 P.2d at 470.  The insured did not ask about embezzlement or theft by employees, and the insurance agent did not advise the insured that theft by his employees or agents would be excluded under the policy.  Id.  The insured submitted a theft claim after a contractor stole funds and materials, and the insurer denied the claim pursuant to an embezzlement exclusion.  Id.  The Oklahoma Supreme Court found that the insured "was bargaining for a policy insuring against theft, and was entitled to know that certain types of theft were excluded" from the policy.  Id. at 472.

In this case, Staci Eldridge sent an email to Sweeten generally requesting insurance coverage for a new boat, and she admits that she did not disclose any specific insurance needs to Sweeten. Dkt. # 2-34, at 3. She clarified that she subjectively wanted a policy that covered all possible losses to the boat, but she did not expressly disclose this to Sweeten when she requested insurance coverage for the boat. Id. at 6-7. Staci Eldridge may be claiming that she requested "full coverage" for the boat, but courts have consistently found that this is simply a general request for insurance coverage that does not trigger any additional duties on the part of the insurance agent. Rotan, 83 P.3d at 895 (general requests for "full" or "adequate" coverage do not expand the duty of an insurance agent to use reasonable care when obtaining an insurance policy). Plaintiffs have made no allegations that Sweeten independently made a representation that he had procured a policy that would cover all potential losses without any possible exclusions and, at most, plaintiffs have claimed that this was their undisclosed, subjective expectation for an insurance policy for the boat. The evidence shows that plaintiffs simply made a general request for insurance for their boat, and Sweeten did not make any misleading representations about the scope of coverage offered under the insurance policy. Plaintiffs have not alleged any possible basis to proceed with negligent procurement of insurance or constructive fraud claims against Sweeten, and the Court finds that Sweeten has been fraudulently joined as a party.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand (Dkt. # 17) is **denied**.

**IT IS FURTHER ORDERED** that plaintiffs' claims against Stacy Sweeten are **dismissed**. Stacy Sweeten is terminated as a party to this case.

**DATED** this 9th day of May, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE